**Joseph J. BALDINE, Appellant,**

v.

**SHARON HERALD COMPANY.**

**No. 16596.**

United States Court of Appeals
Third Circuit.

Argued Oct. 31, 1967.

Decided Jan. 30, 1968.

David J. Eardley, Eardley, Wantz & Svete, Chardon, Ohio (Robert R. Wantz, Chardon, Ohio, on the brief), for appellant.

Philip E. Brockway, Brockway, Brockway & Kuhn, Sharon, Pa., for appellee.

Before McLAUGHLIN, KALODNER and GANEY, Circuit Judges.

OPINION OF THE COURT

KALODNER, Circuit Judge.

Plaintiff, Joseph J. Baldine, brought this libel action in the District Court to recover "general" and "punitive" damages from defendant, Sharon Herald Company, a corporation which owns and publishes a daily newspaper in Sharon, Mercer County, Pennsylvania, circulated in the Sharon area in western Pennsylvania, adjacent to the Pennsylvania-Ohio

border, and in certain contiguous eastern Ohio counties.[1]

Plaintiff alleged in his complaint and pre-trial statements that in 1964 defendant's newspaper was circulated in a portion of Trumbull County, Ohio in the eastern part of the state; that in that year he was a "duly elected" Trumbull County Commissioner and a candidate for re-election in the coming November 3d general election; and that on the afternoon before election day, defendant published in its newspaper a "paid political advertisement" reproduced in the Appendix, which defamed his character and reputation and that as a result of his inability to answer it, he lost the election and suffered "general" damages in the amount of $200,000.00. "Punitive" damages in the amount of $3,000,000.00 were also sought.

Defendant admitted the foregoing allegations, except those relating to the advertisement's defamatory effect and plaintiff's damages. Among the defenses it asserted were that the statements in the advertisement were true and that it published the advertisement without "malice" and under both a "conditional" and "absolute" privilege.

The record discloses that the circumstances surrounding the advertisement's publication were as follows:

On Saturday, October 24, 1964 and Saturday, October 31, 1964, either plaintiff or his supporters caused to be published in defendant's newspaper two paid advertisements in which plaintiff's accomplishments as county commissioner were lauded and his re-election urged. Defendant published these advertisements exactly as they were presented to it, without any investigation into the accuracy or truthfulness of the claims stated in them.

Late Friday evening, October 30, 1964, defendant's retail advertising manager, Stephen Krist was telephoned by one Edward Gaines and asked whether a political advertisement could be placed in defendant's newspaper. Krist replied that it was possible, but that the advertisement would have to be brought to him early the next morning so that it could be "correctly processed for publication."

The next morning, Saturday, October 31, 1964, Gaines brought the advertisement in question to Krist at defendant's newspaper office. Gaines paid for its publication with a check signed by Doctor W. A. James, one of plaintiff's opponents in the county commissioner's race who was endorsed in the advertisement, and told Krist that he was acting at the instance of James. Prior to this time, Krist had not seen the advertisement nor had he been made aware of its contents.

After reading the advertisement, Krist took it to defendant's editor and president, Gerald A. Harshman for approval because defendant had a policy of not accepting "controversial" political advertisements a short time before election day. Harshman also read the advertisement, and after discussing it with Krist, approved its publication.

Harshman testified that he did not know who brought the advertisement in for publication; that he gave his approval because he believed that the advertisement was merely a rebuttal or reply to plaintiff's prior advertisements of October 24th and 31st; that he did not believe the advertisement contained any libelous or malicious statements; and that he did not know whether the statements in it were true or false. He further testified that while he was not personally acquainted with any of the signatories in the advertisement or the candidates it endorsed, he knew William B. Klee, one of the candidates endorsed, and a few of the signatories of the advertisement by their reputations which were very good; that he did not attempt to contact any of the advertisement's signatories in order to verify their sponsorship of it or its accuracy; that he did not otherwise attempt to verify the advertisement's ac-

1. Jurisdiction is based on diversity of citizenship. 28 USCA § 1332. Plaintiff is an Ohio citizen. Defendant is a Pennsylvania corporation with its principal place of business there and is an "employee-stockholder-owned" company.

curacy; and that although his newspaper "ordinarily" consulted an attorney before publishing "controversial" advertisements, "depending upon the gravity of the situation", he did not do so in this case "because it was a Saturday, because it was getting toward the end of the campaign [and] because * * * in our judgment * * * there was certainly nothing wrong with this ad because of the fact it was only answering arguments that had been raised earlier and published there [in plaintiff's two prior advertisements]".

Krist also testified that he knew none of the advertisement's signatories personally, but had "heard the names many times"; that he did not know whether the statements in the advertisement were true or false; that he did not attempt to verify the advertisement's accuracy or attempt to determine whether the signatories had in fact sponsored it; and that he thought the advertisement was a rebuttal or reply to plaintiff's two prior advertisements. He further testified that Gaines was a personal friend of his whom he had known for a "long time", a "reputable fellow" and an employee of defendant's with whom he had worked.

Because defendant's newspaper "hit the streets" at 1:30 in the afternoon, it was too late to publish the advertisement in the Saturday, October 31, 1964 edition, and since the newspaper was not published on Sunday, the advertisement was run in the next edition on Monday, November 2, 1964.

The advertisement was prepared by William B. Klee and published by defendant exactly as it was submitted without any charge or editing. The defendant's newspaper did not editorally comment on any candidate for the office of Trumbull County Commissioner or take any position as to the competency of any candidate for a Trumbull County office, nor did it support any political party.

There was evidence that about a year earlier, on October 16, 1963, defendant ran a news story in its paper which praised plaintiff's conduct as County Commissioner and which contained information at variance with one of the statements in the advertisement in question. However, there was no evidence that at the time the advertisement's publication was requested either Krist or Harshman was aware that such information was in their files or that any other information was in their files from which a verification of the advertisement could be made.

At trial, which was limited to the issue of liability, the jury was instructed in accordance with what the trial judge believed to be the teaching of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny. In reply to four "Special Verdicts" (interrogatories), the jury found that: (1) some of the matters set forth in the advertisement were "false"; (2) none of the false statements were made with "actual malice"; (3) none of the false statements were made "with knowledge of their falsity"; and (4) such statements were *made* and *published* "with reckless disregard of whether they were true or false".[2] (emphasis supplied)

**2.** The "Special Verdicts", as answered by the jury, were as follows:

"State whether or not any of the matters set forth in the political advertisement of November 2, 1964, were true or false.

"Answer true or false: FALSE.

"If you find any of the statements to be false, set forth which matters you find to be false.

"You did not build the Chronically Ill Hospital, as you claimed. Who did? The Trumbull County Tuberculosis Hospital Board of Trustees—with a tax levy voted by Trumbull County Taxpayers and Federal Matching Funds.

"What about:

"Spending $10,000.00 of our tax money to hire an out of town architect to draw plans which were never used?

"Spending $15,000.00 of our tax money on attorneys' fees to fight your own prosecuting attorney, unsuccessfully?

"Spending at least $127,000.00 of our tax money at the Brookfield Radar Site without one cent of competitive bidding?

"If you find any of the statements to be false, state whether or not any of the

The trial judge "construed" the jury's verdict to be a finding of liability, but ordered the entry of judgment N.O.V. in defendant's favor, stating:

"Substantial evidence exists to support the finding that the publication was in part false as found by the jury.

"I must conclude, however, that considering all the evidence and the reasonable inferences to be drawn therefrom most favorable to the plaintiff that as a matter of law the evidence is not sufficient to support the finding that the publication was made with reckless disregard of the truth or falsity of the political advertisement." [3]

Plaintiff's "Motion To Enter Judgment On The Verdict Or In The Alternative Motion For a New Trial" was subsequently denied by the trial judge.

This appeal followed.

Plaintiff here urges that the trial court erred in entering judgment N.O.V. in defendant's favor, and in denying its motion to reinstate the jury's verdict, because, in its view, there was "adequate" evidence to support the jury's finding that defendant published the advertisement with reckless disregard as to whether the statements therein were true or false.

Defendant, in reply, contends that the trial court did not err in finding the evidence insufficient.

■ Applicable to our consideration of this appeal are these settled principles:

A public official cannot recover damages from a newspaper "for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not". New York Times Co. v. Sullivan, 376 U.S. 254, 279–280, 84 S.Ct. 710, 726 (1964).

The stated test "is not keyed to ordinary care; defeasance of the privilege is conditioned, not on mere negligence, but on reckless disregard for the truth". Garrison v. State of Louisiana, 379 U.S. 64, 79, 85 S.Ct. 209, 218, 13 L.Ed.2d 125 (1964), cited with approval in Rosenblatt v. Baer, 383 U.S. 75, at page 84, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966).

■ Negligent failure to check the accuracy of statements in an advertisement and to discover misstatements therein, "is constitutionally insufficient to show the recklessness that is required for a finding of actual malice". New York Times Co. v. Sullivan, supra, 376 U.S. at pages 287–288, 84 S.Ct. at page 730. Otherwise stated, investigatory failures alone are insufficient to show recklessness on the part of a newspaper.

In applying the principles stated, we must " 'make an independent examination of the whole record' * * * so as to assure ourselves that the judgment [of the jury] does not constitute a forbidden intrusion on the field of free expression", and specifically examine for ourselves the statements in issue and the circumstances under which they were published. New York Times Co. v. Sullivan, supra, at page 285, 84 S.Ct. at page 729.

■ Upon consideration of the evidence we are of the opinion that it fails to establish that the advertisement was

---

statements in the political advertisement were made with actual malice?

"Answer yes or no: No.

"If answer is 'Yes', state which matters were published with actual malice.

"If you find any of the statements to be false, state whether or not any of the statements in the political advertisement were made with knowledge of their falsity.

"Answer yes or no: No.

"If your answer is 'Yes', state which matters were published with knowledge of their falsity.

"If you find any of the statements to be false, state whether any of the statements were made with reckless disregard of whether they were true or false.

"Answer yes or no: Yes.

"If your answer is 'Yes', state which matter or matters were published with reckless disregard of whether they were true or false."

(Exhibit 1A in its entirety. [The advertisement of November 2, 1964]).

3. The Opinion of the District Court is reported at 280 F.Supp. 440 (W.D.Pa. 1966).

published by the defendant with "reckless disregard" as to whether the statements in it were true or false.

As in *New York Times,* the advertisement, in the instant case, concerned alleged "official conduct" of a "public official" and it was brought to the defendant newspaper by a reputable person known to the newspaper employee who received it.

As earlier detailed, one Gaines, brought the advertisement to the defendant's retail advertising manager Krist, and requested its publication. Krist's uncontroverted testimony was that Gaines was a personal friend of his whom he had known for a long time; that he was a "reputable fellow" and a fellow employee with whom he had worked; and that although he (Krist) did not know any of the advertisement's signatories personally, he knew a few of them by their reputations which were very good. Defendant's editor Harshman, after receiving the advertisement from Krist and reading it and discussing it with him, approved its publication. Harshman also testified, without contradiction, that although he did not know any of the advertisement's signatories personally he knew that a few of them, as well as William B. Klee whose candidacy the advertisement endorsed, had very good reputations. There was nothing about the circumstances surrounding the receipt of the advertisement from which it could reasonably be inferred that defendant's employees were aware or should have been aware of any inaccuracies or false statements in it.

Plaintiff makes much of the fact that defendant's employees did not make any attempt to determine the accuracy of the advertisement or to verify the sponsorship of its purported signatories and contends that their failure to do so supports the jury's finding of recklessness. The short answer to this contention is that mere investigatory failures alone are insufficient to satisfy the *New York Times* standard, at least where, as in the present case, a contemplated publication comes from a known and reliable source.

What was said in Rosenblatt v. Baer, 383 U.S. 75, at page 86, 86 S.Ct. 669, at page 676 (1966), is pertinently significant here:

> "Society has a pervasive and strong interest in preventing and redressing attacks upon reputation. But in cases like the present, there is tension between this interest and the values nurtured by the First and Fourteenth Amendments. The thrust of *New York Times* is that when interests in public discussion are particularly strong, as they were in that case, the Constitution limits the protections afforded by the law of defamation."

For the reasons stated the October 25, 1966 Memorandum Order of the District Court, 280 F.Supp. 440 entering judgment in favor of Sharon Herald Company, defendant, against Joseph J. Baldine, plaintiff, together with costs, will be affirmed.

GERALD McLAUGHLIN, Circuit Judge, concurs in the result.

## APPENDIX

ADVERTISMENT APPEARING IN THE SHARON HERALD,
MONDAY, NOVEMBER 2, 1964.

*MR. BALDINE:*

YOUR CLAIMS ARE INCORRECT.

THE CLAIMS MADE IN YOUR RECENT ADVERTISING ARE NOT MERELY MISLEADING, THEY ARE *FALSE* * * * WE, THE UNDERSIGNED, BELIEVE THE VOTERS OF TRUMBULL COUNTY WOULD LIKE TO HAVE THE FACTS.

YOU DID NOT obtain the School for Retarded Children, as you claimed.

WHO DID? The mothers of the retarded children. The mothers of the retarded took all the preliminary steps which were essential before the people of Trumbull County could vote on this project. They started the first classes. They obtained state approval and state financial help. They created the Trumbull County Council for Retarded Children.

YOU DID NOT build the Chronically Ill Hospital, as you claimed.

WHO DID? The Trumbull County Tuberculosis Hospital Board of Trustees—with a tax levy voted by Trumbull County Taxpayers and Federal matching funds.

YOU DID NOT pay off $500,000 of the Welfare Debt, as you claimed.

WHO DID? NOBODY. The Welfare deficit you inherited as of December 31, 1960 was $21,934.39. IT IS NOW $1,240,000.00. Mr. Baldine, you claim to be a successful County Commissioner.

WHAT ABOUT:

Spending $10,000 of our tax money to hire an out of town architect to draw plans which were NEVER USED?

Spending $15,000 of our tax money on attorney's fees to fight your own prosecuting attorney, unsuccessfully?

Spending at least $127,000 of our tax money at the Brookfield Radar Site without one cent of competitive bidding? The delay in the new Mahoning River Bridge (N. Mahoning Ave. and Tod Ave.)?

We're sorry, Mr. Baldine, but we cannot accept your claims, however modestly they were made.

The voters NOW HAVE THE FACTS.

VOTE FOR TWO (2) FOR TRUMBULL
COUNTY COMMISSIONER

—VOTE FOR—

## WILLIAM B. KLEE AND W. A. JAMES

Harley J. Kirkpatrick .................................... Warren
William W. Weir ........................................ Warren
Walter E. Eucker ....................................... Hartford
Milton E. Mollenkopf ................................... Warren
Thomas Bettiker ....................................... Cortland
Frank L. Anderson ....................................... Girard
Ralph B. Hoffman ....................................... Vienna
Dio D. Reynolds .................................... Mesopotamia
Fred Tod, Jr. ........................................... Liberty
Mrs. E. G. Kyle .................................... Newton Falls
Peter Mageros ......................................... Hubbard
Mrs. Elizabeth Schroth ................................... Niles
Charles S. Silver ...................................... Howland
Marcus V. McEvoy ..................................... Howland
Mrs. D. J. Humphrey .................................. McDonald
Victor Logan ......................................... Gustavus
Lee D. Kepner ......................................... Warren
Paul L. Gibson ......................................... Vienna
William C. Heim ........................................ Warren

Harley J. Kirkpatrick, Chairman,
1223 North Road NE, Warren