**J. Earl ALEXANDER**

v.

**J. B. LANCASTER et al.**

**Civ. A. No. 15609.**

United States District Court,
W. D. Louisiana,
Monroe Division.

William H. Baker, Holloway, Baker, Culpepper & Brunson, Jonesboro, La., for plaintiff.

Billy R. Pesnell, Hargrove, Guyton, Van Hook & Ramey, Shreveport, La., Royall, Koegel & Wells, New York City, Robert McLean Jeter, Jr., Tucker, Martin, Holder, Jeter & Jackson, Shreveport, La., for defendants.

DAWKINS, Chief Judge.

## RULING ON PENDING MOTIONS

### I. Background and Issues

J. Earl Alexander, a Louisiana citizen, commenced this action in the Second Judicial District Court, Jackson Parish, Louisiana, against J. B. Lancaster, Legislative Auditor of the State of Louisiana, and The Associated Press (AP), seeking recovery of $1,250,000 as damages for alleged defamation.

Complainant alleges that Lancaster in his capacity as Legislative Auditor prepared and issued a defamatory audit report addressed to the Jackson Parish Police Jury. He further charges that after the audit report had been issued, AP released a defamatory news dispatch which materially departed from the audit report on which it was purportedly based. Complainant demanded judgment against defendants, J. B. Lancaster and AP, jointly, severally, and in solido.

Lancaster is a resident and citizen of Louisiana; The Associated Press, however, is a non-profit corporation organized and existing under the laws of the State of New York with its principal place of business also located there.

AP timely filed a petition to remove complainant's State Court action to this Court.

Subsequent to removal of the action to this Court, complainant filed a Supplemental and Amending Petition attempting to add the Times Publishing Company, Ltd., (Times) as a party defendant, complaining of an additional alleged libelous news report published in The Shreveport Times February 22, 1970, which he attributed entirely to the Times Publishing Company, Ltd. (This news report, however, purports to be an AP release picked up by Times.)

Alexander then filed a Motion to Remand his action to the State Court, contending this Court has no jurisdiction.

Both the AP and Times have moved for summary judgment. The Court, therefore, has before it at this time three questions: 1) Is removal by AP proper or should the matter be remanded; 2) should this Court allow amendment of the complaint to add Times as a defendant; and 3) assuming jurisdiction is found, is summary judgment proper in favor of either or both parties defendant?

### II. Removal and Motion to Remand

Removal jurisdiction was invoked by AP upon three grounds: First, that the asserted cause of action against AP was entirely separate and independent of those asserted against Lancaster; second, that since Louisiana's Legislature had not waived the immunity of Lancaster from suit or liability, complete diversity of citizenship existed; and, third, that Alexander's claim raised a federal question involving an essential element of his right to recover damages.

Clearly, the belated attempt at post-removal joinder (filed in connection with the motion to remand) was at least in part an attempt to defeat this Court's jurisdiction by destroying complete diversity, assuming arguendo at this point that Lancaster is not more than a nominal party. (See the Legislative immunity discussion, infra.)

It is clear, however, that the right of removal is determined by the posture of the case at the time the petition for removal was filed. Wright summarizes: "The plaintiff cannot, however, take action to defeat federal jurisdiction and force remand after the case has been properly removed." Wright, Federal Courts (2d ed. 1970), § 38, at p. 134. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); 1 Barron and Holtzoff, Federal Practice and Procedure, § 102. No attempt having been made to join Times as a party defendant until the removal petition had been filed, its presence in this case (if jurisdiction over it is found) is wholly irrelevant to petitioner's motion to remand.

While AP in its brief, in an exhaustive and capable manner, has argued that the

actions against AP and Lancaster are separate and independent claims and are removable under 28 U.S.C. § 1441(c), and we generally agree with it, we do not find it necessary to venture into this admittedly nebulous area of the law of federal jurisdiction depending upon characterization of a state cause of action.

We think AP's contention that removal is proper because Lancaster is no more than a formal or nominal party, and that no more than a colorable claim has been asserted against him, disposes of the question of removal jurisdiction without need of further discussion of AP's other arguments.

██ It is clear that Lancaster, as Legislative Auditor of Louisiana, was and is now immune from both suit and liability for acts performed by him in exercising his official duties. Article 3, Section 35 of the Louisiana Constitution empowers the Legislature to waive its immunity (and its officials acting in their *de jure* capacity) from *suit* and from *liability*, but the Legislature has refused to do so. When the suit was filed, and now, Lancaster's immunity from *suit* was clear. It would be no more than a legal sham to allow his formal "presence" to defeat removal jurisdiction. It is well settled that presence of mere formal or nominal parties—as here, one against whom no valid cause of action is alleged—is not considered in determining diversity jurisdiction for removal purposes. See Wright, Federal Courts (2d ed. 1970), § 29; Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628 (1924); 1A Moore, Federal Practice (1965), ¶ 0.161 at p. 522; 1 Barron and Holtzoff, Federal Practice and Procedure, § 103. The presence of Lancaster, against whom it is clear that no more than a colorable claim has been asserted, *does not defeat diversity removal jurisdiction*. See Miami Pipe Line Co. v. Panhandle Eastern Pipe Line Co., 384 F.2d 21 (10th Cir. 1967), for a closely analogous situation. See also, Scott v. Board of Supervisors, L. S. U., 336 F.2d

557 (5th Cir. 1964); Weinstein, Bronfin & Heller v. LeBlanc, 249 La. 936, 192 So.2d 130 (1966); Watts v. Town of Homer, 207 So.2d 844 (La.App.2d Cir. 1968), writs refused 252 La. 109, 209 So.2d 39 (1968), for discussions of the nature of sovereign immunity in Louisiana.

The claim by plaintiff of unconstitutional action by Lancaster, in an attempt to invoke the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908), is so patently without merit as to call for no discussion.

Accordingly, the Motion to Remand is Denied.

### III.   Times Publishing Company, Ltd.

██ As noted, after AP removed the suit to this Court, Alexander sought to amend his complaint to add Times as a party defendant. (See F.R.Civ.P. 21.) To allow such an amendment, however, would defeat this Court's diversity jurisdiction by creating a lack of complete diversity. In the removal situation we have here, as discussed *supra*, complainant cannot, through post-removal joinder of Times (which is not an indispensable party), defeat this Court's jurisdiction. Consequently, we will not allow the complaint to be amended to join Times, and dismiss it from this suit. This dismissal, however, is without prejudice to the right of Times, in the event a State Court action is instituted against it, to remove to this Court. At that time, if such suit should be instituted and Times removes, this Court can determine whether independent federal-question jurisdiction exists. We need not make that determination now and imply no judgment upon that issue.

Accordingly, the proposed amendment attempting to add Times as a party defendant is disallowed, and it is dismissed from this suit.

### IV.   The Associated Press
### a)  Background

Due to the nature of a motion for summary judgment, full exposition of

the undisputed facts developed here is necessary.

Complainant is now, and for many years has been, engaged in road repair and construction work as Earl Alexander Construction Company, a sole proprietorship. A very substantial portion of his business has consisted of road repair and construction for public bodies.

March 11, 1968, the Jackson Parish Police Jury adopted a resolution awarding Earl Alexander Construction Company a "contract" to blacktop approximately two miles of road in Ward 6 of Jackson Parish. When this resolution was adopted, Alexander was a police juror-elect from Ward 2 of Jackson Parish.

Shortly after adoption of the March 11, 1968, resolution, Mr. McBride, a police juror, verbally notified Alexander to blacktop approximately 2 miles of road. One of the roads designated by McBride to be blacktopped was a one-half (½) mile segment of Davis Road. Alexander stated he then began preparatory work for blacktopping that segment of Davis Road.

Despite preparatory work, Davis Road was never blacktopped. When asked to explain his failure to complete the job, complainant first asserted that he was prevented because of rain. Later, he stated he stopped because of his assuming office. He also offered other reasons. There is no question, however, that on May 16, 1968, he submitted a statement for $2,000 covering work allegedly performed by him on the Davis Road project and that the bill was approved and paid by the Police Jury that same day. Without going into minute detail, it is obvious that complainant's explanations of his failure to perform the work are highly inconsistent and anomalous.

Significantly, an application was filed in August, 1968, with the Louisiana Department of Highways to obtain State funds for the Davis Road project. The description of the project matches exactly the job undertaken, but not completed, by Alexander.

It is unnecessary that we attempt to ascertain why the Davis Road project was never completed. As counsel for AP ably demonstrates, the point is simply that, in view of all the inconsistent and confusing explanations offered by Alexander himself, he can hardly expect or legally exact literal accuracy from Mr. Lancaster in his audit. The facts remain: The Davis Road project was never completed; no contract was ever signed; there was no agreement as to the time for completion, or exact price; no public bids were taken; it facially appears that the Highway Department was requested to do the same work; and Alexander was paid $2,000 by the Police Jury.

*b) The Audit Investigation and Report*

The Office of Legislative Auditor was created by Constitutional Amendment (Art. 6, § 26(2), La. Constitution, as amended) and is an arm of the Louisiana Legislature. He is appointed by and serves at the pleasure of the Legislature. One of his official duties as Auditor is to audit and report upon the financial affairs of political subdivisions of the State, including Parish Police Juries. Lancaster is now and has been Legislative Auditor since creation of the office in 1964.

In June, 1969, the office of Legislative Auditor began a regular audit of the affairs of the Jackson Parish Police Jury. The audit was conducted under immediate supervision of William L. Sims, Jr., who holds a degree in law and has business and accounting training. Mr. Sims is Supervisor of the Monroe District, which includes Jackson Parish. Theo. W. Jones, who holds a B. S. degree in Business Education and has been employed by the Auditor for six and one-half years, did the basic field audit.

The auditing procedure employed by the Office of the Legislative Auditor is briefly outlined as follows: Upon completion of basic field work, the Field Auditor drafts a preliminary report

which, along with his work papers, is submitted to the District Supervisor for review. After review by that official, he decides whether additional investigation is necessary, or revisions and modifications are advisable. He then forwards the entire file to the principal office in the State Capitol at Baton Rouge for final review and revision. The final audit report is then issued.

In this case the Field Auditor spent six to eight weeks doing the basic field work, following which the District Supervisor forwarded the file to Baton Rouge where it began to receive special attention. Lancaster personally handled the review insofar as the comment section of the report was concerned, requested the District Director to obtain additional information, and later personally investigated the matter. The section of the audit report dealing with "Questionable Road Payments" was personally written by Lancaster.

### c) Publication

February 12, 1970, the Legislative Auditor issued an audit report addressed to the Jackson Parish Police Jury covering its fiscal and financial affairs for the two-year period ending December 31, 1968. This report, in relevant part, stated:

"QUESTIONABLE ROAD PAYMENTS

"On March 11, 1968, the Police Jury adopted a resolution awarding to Earl Alexander Construction Company a contract to blacktop approximately 3,500 feet of road 18 feet wide in Ward 5 and approximately 2 miles of road in Ward 6. The resolution did not specify the cost of the projects and bids were not solicited by advertising.

"The following payments were made to Earl Alexander, Contractor:

Ward 5:

| | |
|---|---|
| May 13, 1968, Check No. 632, 3,168' blacktop, 3 coats and set base [at] $1.50 per foot | $4,752.00 |

Ward 6:

| | |
|---|---|
| May 16, 1968, Check No. 815, base spread, labor, equipment and material | 2,000.00 |
| Total | $6,752.00 |

"Ward 4 also paid Earl Alexander, Contractor, $1,000.00 on May 16, 1968, Check No. 602, for labor, material and equipment.

"The statements rendered to the Police Jury on which the above checks were issued did not show the roads on which the work was done. Also, the invoices for the May 16 payments should have shown the amount of labor charged, materials used, and equipment charges.

"The contract awarded for Wards 5 and 6 aggregated over $2,500.00 for both labor and material and should have been advertised for bids as provided by Revised Statutes 38:2211.

"In the Case of the road in Ward 6, this project, according to the specifications submitted to the Department of Highways in con-

formity with the provisions of Act 128 of 1955, was identified as the Davis Road was estimated to cost $4,310.00, detailed as follows:

| 1,300 yards | Native Gravel | [at] | $1.25 | $1,625.00 |
|---|---|---|---|---|
| 75 yards | Washed gravel | [at] | 3.00 | 225.00 |
| 10 hours | Dozer work | [at] | 15.00 | 150.00 |
| 2,600 feet | Asphalt | | | |
| | (3 coats) | [at] | .85 | 2,110.00 |
| | Total | | | $4,310.00 |

"Although the resolution stated that the project in Ward 6 covered approximately two miles of road, the specifications detailed above, particularly the 2,600 feet of asphalt, seem to indicate a project about one-half mile in length. When representatives of this office made an inspection of the road on September 18, 1969, it was noted that the roadway had been graded for a distance of about half a mile and it appeared that some gravel had been placed thereon. However, as some sixteen months had elapsed from the date of payment, which presumably was the date of completion, we could not be certain about it. It was clear, however, that no asphalt had been applied. Whether or not the $2,000.00 paid was a fair price for the work actually performed we cannot say.

"It should also be noted that when the resolution awarding this work to Earl Alexander Construction Company was adopted on March 11, 1968, Mr. Earl Alexander was the Democratic nominee for the office of police juror. He took the oath of office on May 17, 1968.

"It must be said that these projects were poorly and improperly handled from inception. The resolution did not correctly describe the proposed work, it did not contain any reference to the cost, bids were not solicited by advertisement as required by R.S. 38:2211, the work was awarded to a police juror-designate, and some of the work, at least, was not completed sixteen months later."

———◆———

As provided in Art. 6, § 26(2), La. Const. of 1921, as amended, a copy of the audit report was mailed to all members of the Jackson Parish Police Jury (including Alexander) and numerous other State and Local officials. Under the Constitutional provisions and the Louisiana Public Records Act (La. R.S. 44:1 et seq.) audit reports are public records in accordance with those provisions, the Auditor filed the audit reports in his office February 16, 1970, as a public record.

On that same day, an assistant correspondent employed by The Associated Press in its Baton Rouge Bureau checked the audit reports. Based entirely upon the Audit Report of the Jackson Parish Police Jury, he wrote and The Associated Press disseminated to its newspaper members in Louisiana the following news story:

"Baton Rouge, La.—(AP)—The Legislative Auditor Monday criticized the Jackson Parish Police Jury for awarding a road repair contract to Earl Alexander, a current jury member.

"The contract for $4,310 was given to the Earl Alexander Construction Co. for repairs on Davis Road March 11, 1968, when Alexander was the Demo-

cratic nominee for a jury seat, the audit said.

"Alexander was sworn in as a jury member on May 17, 1968, the report said.

"The audit said one section of the contract called for $2,100 for asphalting. When audit investigators inspected the road on September 18, 1969, however, they found no asphalt had been applied to the road.

"'It must be said that these projects were poorly and improperly handled from inception,' the report said. 'The resolution did not correctly describe the proposed work; it did not contain any references to the cost; bids were not solicited by advertisements as required by law; the work was awarded to a police juror designate; and some of the work, at least, was not completed 16 months later.'

"The audit for the year ending Dec. 31, 1968 also criticized the jury for drawing expenses without providing receipts.

"The jury, the audit also revealed, paid $1,917 to fence the private Chatham cemetery.

"'We know of no laws that permit a police jury to make contributions to cemeteries or fence them,' the audit said. 'We strongly recommend that this practice be discontinued in the future.'

"In another audit, the Board of Commissioners of the Abbeville Harbor and Terminal District was faulted for paying out $629 to attend Hug-The-Coast Highway Association Conventions and for failing to file annual reports with the Vermilion Parish Police Jury.

"The audit said investigators were 'unable to determinate what benefit that could derive to the Harbor District from attending' such conventions."

Another dispatch, suitable for broadcast, was prepared by the correspondent and disseminated by The Associated Press on the same day to its radio and television members in Louisiana as follows:

"(Baton Rouge)—The Legislative Auditor today criticized the Jackson Parish Police Jury for its handling of a road repair contract. The audit said the jury awarded the Earl Alexander Construction Company a $4,300 contract for repairs on Davis Road when Alexander was Democratic nominee for a jury position. The report stated further that the resolution approving the contract did not correctly describe the proposed work and contained no reference to cost, bids were not solicited by advertisements as required by law, and at least some of the work was incomplete 16 months after approval.

"The Jackson Parish Police Jury was also cited for excessive convention expenses and for paying out almost $2,000 to fence a private cemetery.

"In another audit, the Board of Commissioners of the Abbeville Harbor and Terminal District was faulted for paying out over $600 for a Hug-The-Coast Highway Association convention and for failing to file annual reports with the Vermilion Parish Police Jury."

### V.  Motion for Summary Judgment

We have no concern here as to whether the publications complained of are true. It is assumed *arguendo* that they are false and further that they are libelous *per se* (although the preponderance of the evidence discloses these are indeed dubious assumptions). Upon motion for summary judgment, the Court must determine: First, whether the publications are protected by the First Amendment under the immunity rule established in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); and, second, if these publications are covered by that doctrine, whether the complainant has come forward with *any* evidence to support a finding that the news dispatches in question were published by The Associated

Press with "actual malice" or with a reckless disregard for the truth.

The answer to the first question has become unmistakably clear since filing of these motions. Much of what complainant has asserted in brief is based on a contention that the *New York Times* Rule is not applicable to Alexander. Relying on the strict language of that rule and the fact that Alexander was not a "public figure" at the time, he argues that the *New York Times* Rule is inapplicable.

In *New York Times*, the Court noted:

"The constitutional guarantees require, we think, a federal rule that prohibits a *public official* from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'— that is, with knowledge that it was false or with a reckless disregard of whether it was false or not." (Emphasis added.) 376 U.S. at 279–280, 84 S.Ct. at 726.

In Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), the Supreme Court clearly held that the *New York Times* Rule was not limited to "public officials" or "public figures."

"We thus hold that a libel action, as here, by a *private individual* against a licensed radio station for a defamatory falsehood in a newscast relating to his involvement in *an event of public or general concern may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not. * * * the negligence standard gives insufficient breathing space to First Amendment values."* (Emphasis added.) *Ibid.*, at 52, 91 S.Ct. at 1824.

It now is no longer subject to *serious* question that this matter is governed by the *New York Times* Rule. There can be no doubt that awarding of a public contract and operations of a local governing body are of "public or general concern." Consequently, the action "may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not." Mere negligence, we emphasize, will not support an award for defamation in the present action.

More specifically, the question presented is whether there is a genuine issue as to any material fact relating to defendant's alleged "actual malice" or "reckless disregard for the truth." Defendant has come forward by discovery depositions with affirmative evidence not only of no malice or recklessness but of no negligence at all. This evidence remains uncontroverted by complainant. See *e. g.*, Beckley Newspapers v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967); Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); Baldine v. Sharon Herald Co., 391 F.2d 703 (3d Cir. 1968).

We agree with AP that the complainant has the burden of coming forward with evidence of actual malice or reckless disregard when his right to recover is challenged and the defendant brings forth affirmative evidence of lack of these factors by motion for summary judgment.

"* * * in order to be entitled to proceed * * * [complainant] could be required to show, on proper challenge such as by the motion and showing for summary disposition here, that it had *sufficient probative substance to be able litigably to give rise to an issue of fact on whether such malice* [recklessness] *actually existed or not.*" (Emphasis added.) United Medical Labs. v. Columbia Broadcasting System, 404 F.2d 706 (9th Cir. 1968), cert. den. 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454. Thompson v. Evening Star Newspaper Co., 129 U.S.App.D.C. 299, 394 F.2d 774 (1968).

While we find the circumstances of this case are so clear as to the appropriateness of summary judgment here even absent any First Amendment considerations, in light of this fundamental constitutional consideration, summary judgment is not only appropriate but required.

The Fifth Circuit has aptly noted:

"At the outset, it may be appropriate to sound a caveat with respect to the action taken by this court in granting the application for *interlocutory appeal*, lest every unsuccessful litigant in the trial court should consider this action as a precedent requiring or even suggesting the advisability of seeking such an interlocutory appeal upon the *denial* by the trial court of his motion for summary judgment. *The subject matter of this litigation, involving, as it does, the very serious and timely question of how far the First Amendment guarantee of freedom of the press may still be impinged upon by actions for libel, places some cases in a somewhat different category. This follows when the trial court and this court jointly consider that the failure to dismiss a libel suit might necessitate long and expensive trial proceedings, which, if not really warranted would themselves offend the principles enunciated by Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, * * * because of the chilling effect of such litigation." Times, Inc. v. McLaney, 406 F. 2d 565, 566 (5th Cir. 1969). (Emphasis added.)

Judge Rives, in Bon Air Hotel, Inc., v. Times, Inc., 426 F.2d 858 (5th Cir. 1970), concluded,

" * * * [T]hus it is clear that, where a publication is protected by the *New York Times* immunity rule, summary judgment, rather than a trial on the merits is a proper vehicle for affording constitutional protection in the proper case." *Ibid.*, at 864–865. See also Smith v. California, 361 U.S. 147, 154, 80 S.Ct. 215, 4 L.Ed.2d 205

(1959); Washington Post Co. v. Keogh 125 U.S. App.D.C. 32, 365 F.2d 965 (1966).

After careful examination of the many pleadings, interrogatories, depositions, etc., we are convinced that the record is devoid of any showing that the questioned news reports disseminated by AP were published with actual malice or with a reckless disregard of whether they were true or false. We find, therefore, that there is no genuine issue as to any material fact and that AP is entitled to judgment as a matter of law.

Accordingly, its motion for summary judgment is granted.

A proper decree should be presented.