'' (Decided 13th November, 1890.)

---

## GEORGE H. FRESH *vs.* JACOB CUTTER.

*Slander — Privileged communication — Punitive damages —*
*Malice.*

C. had at one time been an employé of F., but after he ceased to occupy that relation, and had entered or was about to enter the service of one A., F. of his own accord and without solicitation or inquiry on the part of A. said to him, "he (meaning C.) stole as good as two hundred dollars from me and I want the money." In an action for slander brought by C. against F. it was HELD.

1st. That if the communication made to A. was made in good faith, without malice, in the honest belief of its truth, and under the conviction that it was a duty which F. owed to A. to make it, the words complained of, though spoken voluntarily, and not in response to an inquiry by A., were privileged and not actionable.

2nd. That if the words spoken were known to be false, and were maliciously spoken, or were voluntarily spoken to one to whom F. owed no duty, the words would be actionable.

3rd. That it was error to instruct the jury that if they found for the plaintiff they might give punitive damages, without requiring them to consider the circumstances admitted in evidence respecting the occasion of the publication, the motive which inspired it, the belief of the defendant in its truth, and the honesty and good faith of its utterance.

4th. That the word "malice," in this form of action, is not to be considered in the sense of spite or hatred against a person, but as meaning that the party is actuated by improper and indirect motives, other than the mere purpose of vindicating public justice.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court. The declaration contained three counts, each of which stated that the words complained of were spoken in the presence and hearing of "divers good and worthy citizens of this State." The defamatory words set forth in said counts respectively were as follows: In the first count, "Look out for Jake (meaning the plaintiff) he (meaning the plaintiff) will steal." In the second count: "By gosh, look out for Jake (meaning the plaintiff) he'll steal." In the third count: "He (meaning the plaintiff) stole as good as two hundred dollars from me (meaning the defendant) and I (meaning the defendant) want the money." In addition to the plea "that he did not commit the wrong alleged," upon which issue was joined, the defendant pleaded as follows:

"And the defendant for a second plea, says: That he honestly and *bona fide* believed the words spoken by him were true, and that he spoke them to a neighbor who had employed the plaintiff, or was about to employ him, and that he spoke the words to said neighbor in the *bona fide* performance of a duty and without malice."

A demurrer to this plea was sustained by the Court; whereupon the following plea was filed:

"And for a third plea the defendant says: That when he spoke the alleged slanderous words set forth in the declaration, he honestly and *bona fide* believed them to be true, and that he spoke them only to a neighbor, Mr. Ch. Allen, who had employed, or was about to employ, the plaintiff, and that he spoke the said words to said neighbor in the *bona fide* performance of a duty and without malice."

A demurrer to this plea was also sustained; and trial was had upon the issue joined on the first plea.

*Exception.*—At the trial the plaintiff offered three prayers, the first and second of which are set out in the opinion of the Court. The third is as follows:

3. The word "malicious," in this form of action, is not to be considered in the sense of spite or hatred against a person, but as meaning that the party is actuated by improper and indirect motives, other than the mere purpose of vindicating public justice.

The defendant offered the three following prayers:

1. That if the jury believe from the evidence that the plaintiff had been in the employ of the defendant, and that after said employment had ceased, the plaintiff was employed by the witness Allen, who lived in the same town the defendant did, and was his neighbor, and that for the purpose of putting the said Allen upon his guard, and of doing a friendly act toward a neighbor and without any actual malice and with no intention of injuring the plaintiff, but in the *bona fide* belief that it was his duty to put the said Allen upon his guard, if the jury so find, and further find that the defendant, upon what he regarded as reliable and credible information, honestly and *bona fide* believed the words he spoke to the witness Allen to be true, then said words constituted a privileged communication, and the plaintiff cannot recover.

2. That if the jury find from the evidence that the defendant made the communication to the witness Allen,

as testified to by him, and used the words set forth in the third count of the plaintiff's declaration, and further find that the defendant was the neighbor of the said Allen, and made the said communication to him under the *bona fide* belief that it was his duty to do so, and upon the honest and *bona fide* belief, upon what he regarded as reliable and credible information, that the said words were true in substance and in fact, and made it without actual malice, and with no intention of doing an injury to the plaintiff, then these facts and circumstances, if the jury so find them, are to be taken into consideration by the jury in mitigation of damages.

3. That if the jury believe at the time the alleged slanderous words were used that the defendant was a neighbor of the witness Allen, and lived in the same town with him, and that said Allen had employed or was about to employ the plaintiff, and that the defendant acted upon reasonable ground of information and honestly believed the same to be true, and honestly believed that he had a duty to perform in making the alleged communication, and that he acted under said sense of that duty and not from malice and ill-will towards the plaintiff, then the verdict of the jury, on account of the said communication to said Allen, must be for the defendant.

And the Court, (HOFFMAN, J.) granted the prayers of the plaintiff, and the second prayer of the defendant, and rejected his first and third prayers. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*H. H. Keedy,* for the appellant.

*David W. Sloan,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

Jacob Cutter sued George H. Fresh for defamatory words alleged to have been spoken by the latter of and concerning the former. Cutter had at one time been an employé of Fresh, but after he ceased to occupy that relation and had entered, or was about to enter, the service of one Allen, Fresh, of his own accord and without solicitation or inquiry on the part of Allen, said to Allen "he (meaning the plaintiff) stole as good as two hundred dollars from me and I want the money." These are the alleged defamatory words. It was shown by the evidence that several persons had communicated information to Fresh which induced him to believe that Cutter had, while in his employment, stolen from him. It was also shown that when he learned that his neighbor Allen had employed Cutter, he, Fresh, honestly believed that it was his duty to inform Allen of what he knew concerning Cutter; and that he told Allen these things voluntarily and without being requested, honestly believing it was a duty he owed to his neighbor, and for the sole purpose of putting Allen upon his guard. He testified that he had not been actuated by malice or ill-will, and that he had never had any bad feeling against Cutter. There was some evidence that the words complained of had been spoken by Fresh to a person named Click, though the latter was unable to state whether the language used by the defendant was "took" or "stole."

This brief outline of the facts is sufficient to indicate that the principal question which we are called upon to decide on this appeal is, whether the statement made by Fresh to Allen, under the circumstances named, was a privileged communication or not. If privileged, all the authorities agree in holding that it is not absolutely or unqualifiedly, but only conditionally, so. If falsely and maliciously made, it would be actionable. Malice is the

foundation of the action, and in ordinary cases is implied from the slander; but there may be justification from the occasion, and when this appears an exception to the general rule arises, and the words must be proved to be malicious as well as false. *Beeler vs. Jackson,* 64 *Md.,* 593. This justification from the occasion arises, in the class of cases now being considered, when a communication is "made *bona fide* upon any subject-matter in which the party communicating has an *interest,* or in reference to which he has a *duty,* if made to a party having a corresponding interest or duty," although the communication "contained criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation." *Harrison vs. Bush,* 5 *Ellis & Bl.,* 344. It seems to be generally conceded, as falling within this principle, that where a master gives a character of a servant, unless the contrary be expressly proved, it will be presumed that the character was given without malice; and the plaintiff, to support the action, must prove that the character was both *falsely* and *maliciously* given; and although the statement as to the character should be untrue in fact, the master will be held justified by the occasion, unless it can be shown that in making the statement he was actuated by a malicious feeling, and *knowingly* stated what was untrue and injurious. *Starkie on Sland. and Lib.,* 253. If, under the conditions just named, the statement be made in response to an inquiry, it would undoubtedly be privileged. *Weatherston vs. Hawkins,* 1 *T. R.,* 110; *Child vs. Affleck,* 9 *Barn. & C.,* 403.

But in the case at bar it is conceded that the information was given by the appellant to Allen voluntarily, and not in response to any inquiry whatever, and this is supposed to take the case out of the privilege. It is not perceived why this circumstance should make any difference

if the party has acted honestly, fairly and without malice; though when the information has been voluntarily given this fact, it has been said, may in some cases have a tendency to disclose the motive of the publisher in making the publication. *Townshend on Sland. and Lib.,* sec. 241. Without reviewing the decided cases, it may be said, that the weight of authority is to the effect that the mere fact of the communication being voluntarily made, does not necessarily exclude it as a non-privileged communication; for a publication warranted by an occasion apparently beneficial and honest, is not actionable in the absence of express malice. *Starkie,* 253. Or, as stated in *Odgers on Sland. and Lib.,* 202, "if it were found that I wrote systematically to every one to whom the plaintiff applied for work, the jury would probably give damages against me. On the other hand, if B was an intimate friend or a relation of mine, and there was no other evidence of malice except that I *volunteered* the information, the occasion would still be privileged." *Rogers vs. Clifton,* 3 *Bos. & Pul.,* 587; *Pattison vs. Jones,* 8 *Barn. & C.,* 586. It is a question for the Court whether the statement if made in good faith and without malice is thus privileged. But the plaintiff has the right notwithstanding the privileged character of the communication to go to the jury, if there be evidence tending to show actual malice, as when the words unreasonably impute crime, or the occasion of their utterance is such as to indicate, by its unnecessary publicity or otherwise, a purpose wrongfully to defame the plaintiff. *Dale vs. Harris,* 109 *Mass.,* 196; *Brow vs. Hathaway,* 13 *Allen,* 239; *Somerville vs. Hawkins,* 10 *C. B.,* 583; *Gassett vs. Gilbert,* 6 *Gray,* 94. Or, malice may be established by showing that the publication contained matter not relevant to the occasion. *Townshend,* sec. 245. Expressions in excess of what the occasion warrants do not *per se* take away the privilege, but such excess may be

evidence of malice. *Buckley vs. Kiernan,* 7 *Ir. Com. L. R.,* 75; *Hotchkiss vs. Porter,* 30 *Conn.,* 414.

It follows from these principles that if the communication made to Allen was made in good faith, without malice, in the honest belief of its truth, and under the conviction that it was a duty which Fresh owed to Allen to make it; the words complained of would not be actionable, because privileged, though spoken voluntarily. It is equally clear that if the words spoken were known to be false and were maliciously spoken; or were voluntarily spoken to one to whom Fresh owed no duty in the sense heretofore mentioned, the words would be actionable, because not within the privilege.

In view of these conclusions, there was error in granting the appellee's first and second instructions. Those instructions are as follows, viz., "The plaintiff prays the Court to instruct the jury that if they shall believe from the evidence that the words charged in the declaration were spoken of and concerning the plaintiff by the defendant, in the presence and hearing of other persons than the plaintiff, then the plaintiff is entitled to recover in this action." Second. "That if the jury shall find for the plaintiff, they may award such damages as they in their judgment shall think justified by all the circumstances of the case, not only for the purpose of giving compensation for the injury done to the plaintiff, but also for the purpose of punishing the conduct of the defendant."

The first instruction was wrong in omitting all reference to the defence of privilege. It directed the jury to find for the plaintiff if they believed the defendant spoke the words in the presence and hearing of other persons than the plaintiff. Under this instruction the jury were required to return a verdict against the defendant even though they were satisfied that the words were spoken to Allen alone, in good faith, without malice, in

Fresh *vs.* Cutter.

the full belief of their truth, and under the honest conviction that Fresh was only discharging a social duty to his neighbor in making the communication. This entirely ignored the question of privilege, which was the only defence relied on by the appellant. The second instruction was also erroneous. It allowed punitive damages to be recovered even though the jury were not required to find the existence of actual malice on the part of the appellant. In cases of this character such is not the law. If the occasion brings the words within a qualified privilege no damages can be recovered at all unless the plaintiff shows that actual malice prompted the publication or utterance. The jury should have been so instructed, but they were permitted not merely to assess damages, but punitive damages without any regard whatever to the question of malice. It is true these instructions were taken literally from the case of *Padgett vs. Sweeting*, 65 *Md.*, 404, where they were held by this Court to be correct. But that case was widely different from the one at bar. In the former there was no question of privilege. The words, as here, were actionable *per se*, but were not, as in this case it is alleged, spoken on any occasion which justified their utterance. Under the conditions in *Padgett's Case* the instructions were proper. But the same instructions could not be given in a case like the one before us now, without ignoring all the circumstances admitted in evidence respecting the occasion of the publication, the motive which inspired it, the belief of the defendant in its truth, and the honesty and good faith of its utterance.

The Circuit Court properly rejected the appellant's first and third prayers. They were defective in several particulars. The first one omits to submit to the jury to find whether the words spoken by the appellant to Allen were the words complained of, and it forbids a re-

covery at all if the communication made to Allen, whatever it was, was made in good faith and without malice, even though made to others on an occasion not privileged. In effect, it told the jury if the evidence sustained the hypothesis of the prayer to find for the defendant, notwithstanding the evidence before them respecting the statements made to the witness Click. The third prayer, after submitting to the jury to find the good faith, honest belief, sense of duty, and want of malice on the part of the appellant, concluded thus, "then the verdict of the jury on account of the said communication to said Allen must be for the defendant." The declaration alleges that the words were spoken to divers good and worthy citizens of the State. There was some evidence, as we have already stated, tending to show that Click was one of these persons; and the legal sufficiency of that evidence was not brought into question by a prayer for instructions. If the jury believed it and founded a verdict upon it, they would have been required, had this prayer been granted, to declare specifically that they found, under this prayer, for the defendant as to the words spoken to Allen, and for the plaintiff as to the same words spoken to Click. The conclusion of the prayer was misleading and calculated to confuse the jury. Whilst it is true that the words spoken would not be actionable under certain conditions when spoken to Allen, and would be actionable in the absence of those conditions when spoken to Click, all that the Court could properly do in such a case would be to submit hypothetically to the jury the finding of facts which created the privilege in the one instance, and the opposite facts which destroyed it in the other, and to define to the jury the legal conclusions arising from those different hypotheses. A specific instruction to find for the defendant as to one of these hypotheses without any reference whatever to the other, would have been misleading.

The appellant pleaded specially the privileged character of the communication, and the appellee demurred to the pleas.    The Court sustained the demurrer, and in this we think no error is to be found.    The pleas were too general.    *Odgers on Sland. & Lib.*, 644–5.

The third prayer of the appellee merely defined the meaning of the term malice, and was free from objection.

For the error indicated in granting the appellee's first and second prayers, the judgment must be reversed, and a new trial must be awarded.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 13th November, 1890.)