# BRICE *v.* CURTIS.

### SLANDER AND LIBEL; PRIVILEGED COMMUNICATION.

1. Whether the circumstances existing at the time of the making of alleged libelous statements constituted an occasion of privilege is a question for the determination of the court. Whether there has been an abuse of the privilege; that is, whether actual malice has been shown, is a question for the jury.

2. Where the defendant in an action for slander, claims that the alleged slanderous statements were privileged communications, the burden is upon him to show that they were made on an occasion of privilege. If he so shows, the burden then shifts to the plaintiff to show actual malice; namely, a lack of good faith or a wrong motive.

3. In an action for slander against a physician by an unmarried woman, where the plaintiff's evidence shows that, accompanied by her sister, she visited the defendant for treatment, and as the result of an examination made by him, to which she willingly submitted, he expressed the opinion, in the presence of her sister, that she was pregnant, and, upon her denying such to be the fact, offered to prove by X-ray examination that he was right, which offer she failed to accept, and there is nothing to show that the defendant bore plaintiff any ill-will or was in any way actuated by malice, although it is

shown that his diagnosis was incorrect, the trial court properly directs a verdict for the defendant. (Citing sec. 818 D. C. Code [31 Stat. at L. 1323, chap. 854], making it an offense to wrongfully accuse a woman of unchastity, and making the defendant liable in civil damages to the party injured.)

No. 2341. Submitted January 11, 1912. Decided February 5, 1912.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, upon a verdict directed by the court, in an action for slander.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal by Lelia Brice from a judgment in the supreme court of the District upon a directed verdict for the defendant, Austin M. Curtis, appellee here. The action was for slander.

According to plaintiff's testimony, she contracted a severe cold in March, 1909, from the effects of which she continued to suffer until about the 27th day of May of that year, when, accompanied by her sister, she went to the office of the defendant, a practising physician of this city, to obtain treatment.* The defendant gave her a prescription and directed her what to do in addition to taking the medicine. He also instructed her to return later if not relieved. Becoming no better, she returned on the 3d of June, following, accompanied by her sister, *"for medical advice as to the reason she did not have her usual sickness* and for treatment in respect thereof." The defendant, upon being informed by the plaintiff that she was no better, suggested that it would be necessary to examine her. After the examination he said: "You are in a delicate state and you are about three months gone." The plaintiff denied that such was her condition, whereupon the defendant in support of his diagnosis alluded to certain alleged differences between plaintiff's physical development and that of her sister. The sister then suggested: "Doctor, probably she is at the

---

*The plaintiff's testimony was that she was unmarried.—REPORTER.

changing point," whereupon the doctor asked plaintiff's age, and, upon being informed that it was thirty-eight years, said in effect that her condition was not attributable to that. After more argument the doctor asked: "Do you dispute my twenty-seven years of practice?"—and, upon being answered in the affirmative, said: "Well, come and stand before the X-ray to-morrow, and I will prove that it is so, and if I do not, I will give you $200." Plaintiff did not accede to the doctor's suggestion. She did consult another physician whose medicine relieved her, but did not change her condition. Plaintiff, of course, denied that she was pregnant.

The testimony of the sister did not differ materially from that of the plaintiff. She stated that the doctor, upon the occasion of the second visit, invited plaintiff into his private office, and that she, the witness, accompanied her sister "at her request." The doctor whom plaintiff subsequently consulted testified that, in his opinion, plaintiff was suffering from change of life. The lady by whom plaintiff had been employed as maid testified as to plaintiff's reputation for chastity, and, when another witness was offered upon this point, counsel for the defendant announced that they were willing to concede that plaintiff's reputation in this respect was good.

At the close of the evidence for the plaintiff the court, upon motion of the defendant, ruled that the statements made were "privileged communications, and that there had been no sufficient publication shown to sustain a verdict for the plaintiff." A verdict was accordingly directed for the defendant, and plaintiff excepted.

*Mr. George F. Collins, Mr. Charles H. Hemans,* and *Mr. Thomas Beckett* for the appellant.

*Mr. Mason N. Richardson* and *Mr. James A. Cobb* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Under sec. 818 of the Code [31 Stat. at L. 1323, chap. 854]

it is made an offense wrongfully to accuse any woman of unchastity, and the offender is declared to be liable to a civil action in damages by the party injured. The first question here is whether the circumstances existing at the time the alleged objectionable statements were made by the defendant constituted an occasion of privilege. This question is for the determination of the court. Generally speaking, where both the party making, and the party receiving a communication have an interest in the subject-matter of the communication, the occasion is privileged, and the question then remains whether there has been an abuse of the privilege; in other words, whether actual malice has been shown. "The legal character of the occasion is determined by the ruling of the court, the use of the occasion by the finding of the jury." *Atwater* v. *Morning News Co.* 67 Conn. 504, 513, 34 Atl. 865; *Strode* v. *Clement,* 90 Va. 553, 19 S. E. 177.

The burden is of course upon the defendant to establish an occasion of privilege, to prove that the circumstances were such as to warrant the statement of facts honestly believed to be true. When this burden is sustained, or when, upon the admitted facts, it is plain that a duty rested upon the party making the statements, the burden shifts and the plaintiff must then show actual malice. *Ashcroft* v. *Hammond,* 197 N. Y. 488, 90 N. E. 1117; *Fresh* v. *Cutter,* 73 Md. 87, 10 L.R.A. 67, 20 Am. St. Rep. 575, 20 Atl. 774; *Fahr* v. *Hayes,* 50 N. J. L. 275, 13 Atl. 261. In the last case it was said: "If he [plaintiff] produced any evidence from which express malice could legally be inferred, then it was proper to submit the question to the jury; if he did not, a verdict for the defendant should have been directed." By malice, as used in this connection, we mean a lack of good faith, a wrong motive. Unless, therefore, the evidence would warrant the jury in finding a lack of good faith, there can be no recovery.

Admittedly, the relation which the defendant sustained to the plaintiff upon the occasion in question was of a most confidential character. She appeared at his office with her sister, and sought his advice as to her condition and treatment for

the same. Each party was interested, and it was the defend-
ant's duty honestly to express an opinion as to plaintiff's con-
dition. The occasion was therefore clearly privileged. The
only remaining question is whether there is anything in plain-
tiff's evidence which would warrant a finding that the defend-
ant was not acting in good faith, or was actuated by malice.

In *Beeler* v. *Jackson,* 64 Md. 589, 2 Atl. 916, the defendant
was a general agent in charge of a station of a railroad com-
pany. The plaintiff and several fellow servants had been dis-
charged from the service of the company. These men applied
to the defendant to know the reason of their discharge. There
were clerks in the next office and within hearing. The de-
fendant replied that the men were discharged for "stealing
fruit, fish, nuts, and breaking up car doors and taking them
home." The testimony showed that the defendant appeared
to be excited and angry at the time. The court ruled that it
was a proper and legitimate occasion for the defendant "to
speak freely and without reserve." The court further said:
"In order to relieve him [the defendant] from all embarrass-
ment, the law shields him from any injurious ·consequences on
account of his answer; provided it is given in truth, honesty,
and fairness. Within these limits, it is a privileged communi-
cation." The court, alluding to the presence of others, held
that plaintiff could .not complain "that his question was an-
swered when and where it was asked." In *Fahr* v. *Hayes,*
supra, the defamatory statements were uttered in the presence
of bystanders. The court, however, attributed no importance
to that circumstance, saying: "The presence of bystanders
at that meeting was a mere casual incident, not in any sense
sought by the defendant, and for which, therefore, he should
not be held responsible." In *Alpin* v. *Morton,* 21 Ohio St.
536, the· defamatory statements were made by a physician,
outside of the presence of the plaintiff, and to one in no way
entitled to receive them. The court, in discussing this point,
said: "The opinion must be given to a person who is reason-
ably and properly entitled to it, in the natural course of his
(the physician's) professional business."

In the instant case the statements of the defendant were made in the natural course of his business, and in response to the express and implied request of the plaintiff that she be informed as to the nature of her ailment.   The sister, the only third party present, was there by the procurement of the plaintiff, and the defendant was in no way responsible for her presence.   She accompanied the plaintiff upon each of the two occasions, and, by request of the plaintiff, was present when the defendant made the examination.   The defendant, therefore, had a right to assume that he could speak freely and frankly.   Certain it is that, unless he took advantage of the occasion for the purpose of vilifying the plaintiff, and of making statements so far beyond the demands of the occasion as to indicate malice or lack of good faith, the presence of this witness, in the circumstances disclosed, in no way affects the situation.

There is no evidence whatever tending to show malice. Upon the occasion of the first visit, the defendant expressed no opinion as to the condition of the plaintiff.   Upon the occasion of the second visit he expressed no opinion, until he had made an examination.   While we must assume that the defendant was mistaken in his diagnosis, there is no evidence that the conditions upon which he based that diagnosis did not reasonably admit of the conclusion reached.   There is no evidence that the defendant bore plaintiff any ill-will.   On the contrary, the fact that she consulted him indicates that their relations were friendly, or, at least, not unfriendly.   Having, after an examination, expressed his opinion as to plaintiff's condition, it was but natural that the defendant should have sought to sustain that opinion.   The conversation following the first expression of opinion was inspired by the plaintiff and her sister, and there is nothing in that conversation indicating a lack of good faith on the part of the defendant.   His suggestion that the plaintiff submit to an X-ray examination clearly indicated his conviction that his diagnosis was correct.

Judgment affirmed with costs.                    *Affirmed.*