**Clarence W. McFARLAND**

v.

**The HEARST CORPORATION.**

**Civ. No. 18632.**

United States District Court,
D. Maryland.

Oct. 15, 1971.

Clarence W. McFarland, pro se.

Theodore Sherbow, John B. Jaske and Sherbow, Shea & Doyle, Baltimore, Md., for defendant.

THOMSEN, District Judge.

This is an action for defamation arising out of defendant's publication in The Baltimore News American on April 14, 1967, of a news article entitled "McFarland Denies Guilt". Plaintiff objects to the following portion of that article, which he alleges is untrue:

> "Clarence W. McFarland, one of the most vicious criminals in the United States, pleaded innocent this morning in Federal Court to a charge of escaping from a federal jail."

The remaining uncontested portions of the article state in pertinent part:

> "McFarland was on the F.B.I.'s 'Ten Most Wanted Criminals' list when he was arrested in the 2400 block North Charles St. by Baltimore City police April 5 on suspicion of burglary.
>
> " * * *
>
> "McFarland had been hunted widely by federal authorities since he broke out of the Montgomery County detention center in Rockville in December by filing a bar in his cell and going over a 12-foot wall. * * * *"

Plaintiff alleges that the first paragraph of defendant's news account was untrue in two respects: (1) in describing him as a "vicious" criminal, and (2) in stating that he had escaped from a "federal jail". Plaintiff was serving a federal sentence but was being temporarily held in the Montgomery County Detention Center, which had a contract with the United States to provide facilities for federal prisoners.

Defendant has moved for summary judgment under Rule 56(b) and (c), F. R.Civ.P., alleging that the publication falls within the doctrine of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), which requires a plaintiff to prove that the alleged defamatory statement was made by defendant with actual knowledge of its falsity or with reckless disregard as to its truth or falsity. Defendant submitted with its motion affidavits of various members of its news dissemination staff, to show that defendant did not violate the New York Times rule. The affidavits referred to an F.B.I. bulletin, attached to the affidavit, which stated that plaintiff had been placed on the list of "Ten Most Wanted Fugitives", and to an F.B.I. "Wanted Flyer", referring to plaintiff's criminal record and characteristics, and containing a "Caution" that "McFARLAND REPORTEDLY HAS QUICK TEMPER, USUALLY CARRIES A GUN AND MAY RESIST APPREHENSION. CONSIDER VERY DANGEROUS."

The first question is whether defendant is entitled to the benefit of the New York Times rule in this case. Before the decision in Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), this issue of constitutional privilege focused upon whether the allegedly libeled plaintiff was either a "public official" or a "public figure". See, e. g., New York Times v. Sullivan, supra; Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In Rosenbloom the Court indicated that the New York Times standard would be applied to publications concerning a matter of public or general interest, whether or not the person claiming to have been libeled was a public official, a public figure or a private individual. See particularly dis-

cussion in the plurality opinion, 403 U.S. at 44–46, 91 S.Ct. 1811, and Credit Bureau of Dalton, Inc. v. C.B.S. News, 332 F.Supp. 1291 (N.D.Ga.1971).

■ This court concludes that plaintiff's escape from jail, and his plea of innocence to the escape charge, along with the F.B.I. bulletin and flyer, were matters of public or general interest; therefore, defendant may avail itself of the *New York Times* doctrine.

■ Even under the "public figure" test, defendant would have been entitled to the benefit of the *New York Times* rule. In Urbano v. Liston, D.Md., No. 15092, February 12, 1970, Judge Northrop held that criminal activity is "an area of substantial public interest" and that the plaintiff, by committing a homicide in the course of a robbery, had made himself a public figure. See also Time, Inc. v. McLaney, 406 F.2d 565, 573 (5 Cir. 1969), cert. den. 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969).

The next question is whether the alleged falsehoods were made "with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, supra, 376 U.S. at 280, 84 S.Ct. at 726.

In the affidavits attached to the motion for summary judgment, defendant's reporter, who called the story in, the writer of the article, the city editor and the managing editor, all deny having had actual knowledge of any errors in the news account at the time of its publication. Plaintiff does not take issue with these assertions, but rather with the further assertions of the affiants that they did not publish with reckless disregard as to the truth or falsity of the statements in the news account.

In defining "reckless disregard", the Supreme Court has narrowly limited the scope of a defendant's potential liability for a publication. In Curtis Publishing Co. v. Butts, supra, the Court held that a plaintiff must show "highly unreasonable conduct constituting an extreme de-

parture from the standards of investigation and reporting ordinarily adhered to by responsible publishers." 388 U.S. at 155, 87 S.Ct. at 1991. In St. Amant v. Thompson, 390 U.S. 727, 731–732, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968), the Court stated that "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication." This standard was reasserted by the Court in *Rosenbloom*, supra, 403 U.S. at 56, 91 S.Ct. 1811.

■ The standard of recklessness may vary with respect to the nature of the publication involved. Where an article is planned months in advance and time is not crucial, more extensive verification procedures may be required. See, e. g., Curtis Publishing Co. v. Butts, supra, 388 U.S. at 158, 87 S.Ct. 1975. However, in reporting "hot" news items of public interest for rapid dissemination, the courts have recognized that extensive verification procedures are impracticable and, therefore, not required. See Rosenbloom v. Metromedia, Inc., 415 F.2d 892, 896 (3 Cir. 1969); Washington Post Co. v. Keogh, 125 U.S. App.D.C. 32, 365 F.2d 965, 972 (1966); Curtis Publishing Co. v. Butts, supra, 388 U.S. at 158, 87 S.Ct. 1975. The publication in the instant case was a "hot" news item and, therefore, as in *Rosenbloom*, did not require extensive verification.

Defendant based its news account, in large part, on plaintiff's lengthy criminal record, set out in the F.B.I. flyer and bulletin. These documents described defendant as having a quick temper, being frequently involved in physical altercations, and usually carrying dangerous firearms. The F.B.I. flyer also contained the Caution: "Consider very dangerous."

■ Although the F.B.I. documents do not use the word "vicious", their characterization of plaintiff as being dangerous reasonably permitted defendant to infer from those reports that plaintiff was a "vicious" criminal. The word "vi-

cious" has various meanings; it is defined, in pertinent part, in the American Heritage Dictionary not only as "Addicted to vice, immorality or depravity; malicious reprobate, evil;" and "Characterized by spite or malice;" but also as "Disposed to or characterized by violence or destructive behavior"; and "Behaving in an unruly or potentially dangerous manner". Other modern dictionaries contain similar definitions. Even if the F.B.I. reports were deemed to be inaccurate in describing plaintiff's character traits, defendant's reliance on such reports was not reckless disregard for the truth, where it has not been alleged or shown that defendant had any reason to seriously doubt their truth. In *Rosenbloom,* supra, the defendant's reliance on a technically false report of a police captain was held not to amount to recklessness.

Finally, defendant did not recklessly disregard the truth by reporting that plaintiff "pleaded innocent to a charge of escaping from a federal jail". That was the charge. The article in question also stated that McFarland had broken out of the Montgomery County Detention Center. The F.B.I. documents, upon which defendant relied, stated that McFarland had been charged with "escape from confinement while a Federal prisoner".

Even if there were a technical error in using the term a "Federal jail" in the one paragraph, another paragraph made it clear that McFarland was charged with escape from the Montgomery County Detention Center. Considering the need for rapid dissemination of the news, defendant did not have a duty to verify the precise nature of the institution from which plaintiff, a federal prisoner, escaped, nor the circumstances under which he was being held in that institution. In any event, such a technical error would not amount to a defamation.

Because there is no basis in the record to support a finding of knowing falsehood or reckless disregard on the part of defendant, this court concludes that summary judgment, rather than a trial on the merits, is the "proper vehicle for affording constitutional protection" to defendant under the *New York Times* doctrine. Time, Inc. v. Johnston, 448 F.2d 378 (4 Cir., Sept. 13, 1971). See also Time, Inc. v. McLaney, 406 F.2d 565, 571–572 (5 Cir. 1969); Washington Post Co. v. Keogh, 125 U.S.App.D.C. 32, 365 F.2d 965, 967 (1966). Defendant's motion for summary judgment will, accordingly, be granted.

The Clerk is instructed to enter judgment for defendant, The Hearst Corporation.