**Ronald B. HOLLANDER t/a King George Motel**

v.

**PAN AMERICAN WORLD AIRWAYS, INC., a corporation.**

**Civ. A. No. 71–1043–M.**

United States District Court,
D. Maryland.

Sept. 25, 1973.

Supplemental Opinion March 7, 1974.

Milton M. Burke, Silver Spring, Md., and Jack H. Olender, Oxon Hill, Md., for plaintiff.

John H. Mudd and H. Thomas Howell and Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

*Memorandum Opinion and Order*

JAMES R. MILLER, Jr., District Judge.

This is a suit for libel and slander brought by Ronald B. Hollander, trading as the King George Motel in Annapolis, Maryland, against Pan American World Airways, Inc. (Pan Am). Jurisdiction is asserted on the basis of diversity of citizenship. The suit is based upon a letter written by one Morton Young, senior manager of Pan Am's public relations department at the time, to the motel and to "King George's College" and to the Annapolis Chamber of Commerce, complaining about the treatment his wife received when she and a companion attempted to register at the motel. The text of the letter, which was written on Pan Am stationery, is as follows:

"Gentlemen:

"I am writing on behalf of my wife concerning her treatment at the King George Motel on April 22

"She was a participant in the Northeast Regional Conference of English in the Two Year Colleges, hosted by King George's College, at the Annapolis Hilton Inn. The Hilton was filled and I made a reservation for her and a colleague for a room at the King George Motel, Apr. 22–24. The motel requested a deposit of $14.50 plus 60¢ tax, the rate for one night. Perfectly reasonable, and I sent a check.

"When my wife and her colleague arrived the evening of April 22, the desk clerk refused to allow them to register unless they paid in advance for the *next* night. Now, both of us have done extensive travelling in this country and abroad. Never have we encountered such treatment—no matter what price the accommodations. They rightly refused to pay for the next night, losing the deposit for the first night.

"Fortunately, the Hilton had a last-minute cancellation and they stayed there. The service and accommodations were superb, my wife tells me.

"As you can see, I am sending copies of these letters to the motel and to the college. To the latter as a precaution, should there be a need in the future to divert some potential unfortunate to

the King George Motel. And to the motel to stress that I think it is a blot upon an otherwise pleasant and friendly city.

"For myself, I will know better than to send visitors from overseas anywhere near the motel and will recommend to press groups—which Pan Am hosts on visits to the U.S.A. from time to time—that they stay at the Hilton; adding, under no conditions are they to risk a rebuff or mar their stay by booking rooms of a motel that does not understand what they are in business for. Although, judging from the description of the motel by my wife and her colleague, the motel management may be more accustomed to booking rooms by the hour than by the night.

"Regretfully,

"Morton Young
Senior Manager
Public Relations"

Plaintiff claims that the letter is slanderous *per se* in that it allegedly imputes an illegal act to him (renting rooms for immoral purposes) and also that it asserts a lack of qualification on the part of plaintiff to conduct the business of operating a motel. See oral opinion of May 5, 1972, Paper No. 17, at 4-5. In a hearing on defendant's motion to dismiss on May 5, 1972, the court held that the former did not constitute libel *per se* while the latter did. *Id.*

Defendant has now filed a motion for summary judgment, pursuant to Rule 56, F.R.Civ.P., based upon two grounds: (1) That the alleged libel and slander was neither authorized nor ratified by defendant and was not published by an agent of defendant acting within the scope of his employment, and (2) that the alleged libel was a privileged communication under the common law of Maryland and the First Amendment to the United States Constitution.

The law in this circuit concerning summary judgment was set out in Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co., 381 F.2d 245, 249 (4th Cir. 1967), as follows:

"It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. Neither should summary judgment be granted if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions. 3 Barron & Holtzoff, Federal Practice & Procedure § 1234 (Rules ed. 1958). Burden is upon party moving for summary judgment to demonstrate clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against him. 3 Barron and Holtzoff, Federal Practice & Procedure, § 1235 (Rules ed. 1958).

"In Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228 (4th Cir. 1955), the court repeated its holding in Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir. 1951), that summary judgment under Rule 56 should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. This is true even where there is no dispute as to the evidentiary facts but only as to the conclusions or inferences to be drawn therefrom, and the 'party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence.' Cram v. Sun Ins. Office, Ltd., 375 F.2d 670, 674 (4th Cir. 1967).

"As we stated in American Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir. 1965):

'Not merely must the historic facts be free of controversy but also there must be no controversy as to the inferences to be drawn from

them. It is often the case that although the basic facts are not in dispute, the parties nevertheless disagree as to the inferences which may properly be drawn. Under such circumstances the case is not one to be decided on a motion for summary judgment.'"

## I. Scope of Employment

The first ground in support of the motion was previously raised by defendant in a motion to dismiss which was denied by this court on May 5, 1972. The court stated at that time that while it may later appear that there was no authority for Young to act as he did, the court did not reach such a factual determination for purposes of deciding the motion to dismiss. Since then the defendant has filed affidavits in support of its motion for summary judgment. Defendant specifically points to the affidavit of Anthony Lutz, Mr. Young's superviser at Pan Am, as conclusive evidence that Young was acting outside the scope of his duties in writing the letter. In the affidavit Lutz lists Young's duties at the time as senior manager of public relations for Pan Am and states affirmatively that Young had no authority to "blacklist" any hotel or to dissuade overseas visitors from patronizing any hotel. The affiant also states that the letter was prepared without the knowledge, consent, approval, or authority of Pan Am or any officer or agent thereof and that there is no copy of the letter in Pan Am's files.

The Maryland law on the scope of employment test in defamation cases is set out in Lewis v. Accelerated Transport-Pony Express, Inc., 219 Md. 252, 148 A.2d 783 (1959), as follows:

"In Hopkins C. Co. v. Read Drug & C. Co., 124 Md. 210, 92 A. 478, 479, this Court stated that a corporation is liable for the slanderous words of its employees if such words were acts within the scope of the employee's employment. In that case, the Court, quoting with approval from the case of Sawyer v. Railroad, 142 N.C. 1, 54 S.E. 793, said: 'The simple test is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By "authorized" is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders.'

"In the later case of West v. F. W. Woolworth Co., 215 N.C. 211, 1 S.E.2d 546, 548 (N.C.1939), the rule was stated thus:

'An act is within the scope of the servant's employment where necessary to accomplish the purpose of his employment and intended for that purpose, although in excess of the powers actually conferred upon the servant by the master. That the act was committed while the servant was on duty performing the functions of his employment and it was committed for the purpose of furthering the business of the master, rather than its method of performance, is the test of employment. When a wrong is committed by an employee in performing or attempting to perform the duties and functions of his employment it is immaterial whether the injury was a result of negligence or willful and wanton conduct; nor is it necessary that the master should have known that the particular act was to be done. * * * The question of liability does not depend on the quality of the act, but rather upon the question whether it has been performed in the line of duty and within the scope of the authority conferred by the master.'

And this is the law generally. See Anno. 150 A.L.R. 1346." [219 Md. at 255–256, 148 A.2d at 785].

The Maryland Court of Appeals has more recently added that for an intentional tort by a servant to be within the scope of his employment, it must be "an *expectable* act done in furtherance of his employment." LePore v. Gulf Oil Corp., 237 Md. 591, 600, 207 A.2d 451, 456 (1965) (emphasis added).

 The first issue for purposes of this motion is whether the letter was written by Young within the scope of his express or implied authority. Reading the letter and the affidavit in the light most favorable to the position of the plaintiff on this motion, it is conceivable that the letter could have been written within the scope of Young's employment since his job as public relations manager could have required him to have dealt with press groups of the sort mentioned in the letter. Much of the Lutz affidavit consists of conclusory statements or statements not necessarily within the affiant's personal knowledge. Paragraph 4 of the Lutz affidavit indicates that Young did not have the authority to carry out his threats in the letter; however, a principal may be held liable for acts of an agent even where they are expressly prohibited. As the Maryland Court of Appeals has stated, "by 'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, *even though in opposition to his express and positive orders*." Lewis v. Accelerated Transport-Pony Express, Inc., *supra*, 219 Md. at 255, 148 A.2d at 785 (emphasis added). Nowhere in Mr. Young's affidavit does *he* state that he was acting purely on his own. Supporting affidavits may be insufficient to satisfy the burden imposed upon the party moving for summary judgment, even though the opposing party fails to present any competent counter-affidavits or other materials. 6 Moore's Federal Practice ¶ 56.11[3], at 2170 (2d ed. 1972). Here, when all of the evidence is considered in the light most favorable to plaintiff, inferences could properly be drawn which raise a material issue of fact as to whether Young acted expectably in furtherance of Pan Am's business so as to be within the scope of his employment.

## II. *Privilege*

Defendant argues that the letter was a privileged communication under the law of Maryland and the First Amendment to the United States Constitution.

 The Maryland law on the type of conditional privilege herein asserted was discussed in Orrison v. Vance, 262 Md. 285, 277 A.2d 573 (1971). The Maryland Court of Appeals stated:

"Our inquiry begins with the subsidiary question whether the information itself and those who received it are of a kind and character which will allow Vance to claim privilege. In this regard we look to the relationship between Vance and the recipients, the legal, moral or social duty impelling him to transmit the information, and whether he did so in good faith. Simon v. Robinson, 221 Md. 200, 154 A. 2d 911 (1959); Fresh v. Cutter, 73 Md. 87, 20 A. 774 (1890). Undoubtedly there are many varieties of situations in any of which the conditional or qualified privilege might arise. W. Prosser, Law of Torts §§ 593–612 (1964), and were we obliged to fit the instant case into a convenient and recognizable slot we think it will be found in Restatement, Torts § 598:

'An occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that

'(a) facts exist which affect a sufficiently important public interest, and

'(b) the public requires the communication of the defamatory matter to a public officer or private citizen and that such person is authorized or privileged to act if the defamatory matter is true.' " [262 Md. at 292–293, 277 A.2d at 576].

The plaintiff in *Orrison* argued that defendant's statements were made with actual malice and that he therefore lost

the privilege. The court, however, responded that plaintiff had the burden of proving not only actual malice, but that the statements were false, adding:

"It has been said that no word in the law is used more loosely than the word 'malice,' 1 Harper and James, The Law of Torts § 5.27, 450 (1956), and quite likely this is true. Perhaps, in this context, a more precise expression would be 'abuse of privilege.' Significant in rebutting privilege is the speaker's motive which

' * * * must be some motive inconsistent with the social policy which gives rise to privilege and which affords prima facie immunity to the defendant. If it appears that the defendant has attempted to use the circumstances and the occasion for a purpose not within that for which the immunity is extended, the privilege is abused and he is liable. And this is as it should be. If the communication is made, not at all for the purpose of protecting interests legally recognized, nor in the performance of a duty which the law encourages, "the pretense under which it is made, instead of furnishing a defense, will aggravate the case." [Fairman v. Ives, 5B & Ald. 642, 106 Eng.Rep. 1325, 1328 (1822).] It is thus seen that "actual malice" really does not exclusively mean ill-will. It is better described as an improper purpose, i. e., a purpose inconsistent with the social policy which it is the purpose of the law to secure by the technical device of privilege.' Id. at 452." [262 Md. at 294–295, 277 A.2d at 577].

The Court of Appeals stated that in this context, malice means "a reckless disregard of truth, the use of unnecessarily abusive language, or other circumstances which would support a conclusion that the defendant acted in an ill-tempered manner or was motivated by ill-will." [Id. at 295, 277 A.2d at 578]. In determining an abuse of privilege, "all relevant circumstances are admissible, . . . including the defendant's reasonable belief in the truth of his statements, . . . the excessive nature of the language used, . . . whether the disclosures were unsolicited, . . . and whether the communication was made in a proper manner and only to proper parties. . . ." Id. (citations omitted).

Under Maryland law, it is traditionally the responsibility of the court to determine whether allegedly libelous words were written on a privileged occasion. Casale v. Dooner Laboratories, Inc., 503 F.2d 303 (No. 72–2180) (4th Cir., July 13, 1973); Hanrahan v. Kelly, 269 Md. 21, 29, 305 A.2d 151 (1973); Peurifoy v. Congressional Motors, Inc., 254 Md. 501, 512, 255 A.2d 332 (1969); Fresh v. Cutter, 73 Md. 87, 93–94, 20 A. 774 (1890). In making the determination in the context of the facts of this case as to whether a qualified privilege existed, the court must answer affirmatively the following two questions:

(1) Did the information communicated by Young involve a matter of sufficiently important public interest as to give rise to the privilege?

(2) Were the recipients of Young's letter the proper parties to receive such information within the context of the privilege?

A consideration of the first question starts with the recognition that the major complaint that Young raised in the letter was the alleged improper business practice of plaintiff in requiring Young's wife to pay the room rent in advance for two nights. Plaintiff, however, is more concerned with the rent-by-the-hour statement in the letter which he contends implies that he was in the practice of unlawfully renting rooms for purposes of prostitution or sexual activity between unmarried couples. As indicated above, this court has already ruled that the latter statement does not constitute libel per se.

In the case of Bon Air Hotel, Inc. v. Time, Inc., 295 F.Supp. 704 (S.D.Ga.

1969), aff'd, 426 F.2d 858 (5th Cir. 1970), involving the publication of allegedly defamatory statements about a hotel in a national magazine, the court observed that, "Hotels are public accommodations. The business of running them is of a public or quasi-public character. 43 C.J.S. Innkeepers § 8. By opening its doors to travelers an innkeeper invites both guests and criticism of the inn." 295 F.Supp. at 707. The hotel involved was located in Augusta, Georgia, near the site of the Masters Golf Tournament and the article was published in "Sports Illustrated." The court found that the sort of public accommodations that a visitor could expect to find at Augusta during Masters week was a "matter of considerable interest to those of the *golfing* public who contemplate attending the Tournament." *Id.* While the *Bon Air Hotel* case involved First Amendment law, there is no reason to believe that the conditions of a local hotel are any less a matter of public interest when the law concerning privileged communications is applied. The letter which was found to be privileged in Orrison v. Vance, *supra*, was a complaint to the Prince George's County Commissioners about the presence of old refrigerators stored in a yard near an elementary school. Certainly the conditions and treatment of guests at a local motel affects as sufficiently important a public interest as the subject of the letter in *Orrison*. The public interest has been found affected by a variety of activities. See, e. g., MacFarland v. Hearst Corp., 332 F.Supp. 746, 749 (D.Md.1971) (Criminal activities); Arizona Biochemical Co. v. Hearst Corp., 302 F.Supp. 412, 415–416 (S.D.N.Y.1969) (Trash removal); Serino v. Dun & Bradstreet, Inc., 267 F.Supp. 396, 398–399 (D.S.C. 1967) (Mercantile credit reports); Alexander v. Lancaster, 330 F.Supp. 341 (W.D.La.1971) (Awarding of public contract). Moreover, as the Court of Appeals stated in *Orrison*, the issue is whether the author of the letter *reasonably believed* that a sufficiently important public interest was affected. 262 Md. at 293, 277 A.2d 573. While there may have been no legal duty impelling Young to write the letter, it cannot be said that he was not socially or morally justified in doing so, at least as far as the Chamber of Commerce was concerned. The uncontradicted affidavit of Morton Young tends to establish the fact that he acted reasonably in believing the matter to be of sufficient public interest to justify his communicating with the appropriate persons or organizations.

 The second question is whether the recipients of Young's letter were the proper parties to receive such information within the context of the privilege. In Simon v. Robinson, 221 Md. 200, 154 A.2d 911 (1959), the Maryland Court of Appeals held that a libelous communication is privileged when the occasion shows that the communicating party and the recipient have a mutual interest in the subject matter or some duty with respect thereto, or when the defendant in good faith, and without malice, reasonably believed that such was the case. *Id.* at 206, 154 A.2d 911. The existence of a common interest or duty, in the absence of a dispute as to facts, is a question of law. *Id.* at 205, 154 A.2d 911. See also Peurifoy v. Congressional Motors, Inc., *supra*, 254 Md. at 512, 255 A.2d 332. In Simon v. Robinson the facts revealed that there was no mutual interest in the subject matter of the letter, and a jury question was therefore presented as to the reasonableness of defendant's belief that there was one.

In this case Young sent copies of the letter to the motel, to the Annapolis Chamber of Commerce, and to "King George's College." There is no question that the privilege applies to the letter sent to the motel and, indeed, plaintiff does not contend to the contrary. See Stevenson v. Baltimore Baseball Club, Inc., 250 Md. 482, 243 A.2d 533 (1968). Judged by the standard of *Orrison* and *Simon* the letter to the Chamber of Commerce also appears to fall within the privilege. Cf. Trim-A-Way Figure Contouring v. National Better Business Bureau, 37 A.D.2d 43, 322 N.Y.S.2d 154

(1971). The affidavit of the Executive Director of the Chamber of Commerce and the by-laws attached thereto indicate that the Chamber of Commerce was an appropriate civic forum to correct allegedly improper business practices. It is apparent from the letter and the affidavit of Mr. Young that he did not wish to see his wife or others "victimized" by what he believed to be the improper conduct of the motel and that he felt that the Chamber of Commerce could rectify the situation. The court cannot say that Mr. Young's belief was unreasonable that the Chamber of Commerce was an appropriate body to inform of the plaintiff's alleged methods of operating a motel.

A closer question is presented by the copy of the letter to "King George's College." In the first place, there is no college in Annapolis by that name. What Young was undoubtedly referring to in his letter was St. John's College, the host school for the convention attended by his wife. There is no evidence in the record to indicate that the letter addressed to King George's College by Young was ever actually received by St. John's College or by anyone else. The presumption that a letter sent through the mails was received by the addressee does not apply where the letter was addressed incorrectly. I Wigmore on Evidence § 95 (3d ed. 1940); Bostain v. De Laval Separator Co., 92 Md. 483, 487, 48 A. 75 (1901). It is therefore unclear whether the alleged libelous letter was ever published as far as the college is concerned. Assuming *arguendo* that it was received by St. John's College, it may still come within the qualified privilege if it was received by someone at the college that Young would have been justified in believing could have taken action if the allegations in the letter were true. Young stated in the letter that he sent a copy to the college "as a precaution, should there be a need in the future to divert some potential unfortunate to the King George Motel." Presumably he intended this as a warning to the college not to recommend to guests attending any future conventions it hosted that they stay at the King George Motel. In this respect the college, through its proper representatives, may very well have had an interest in taking action on the allegations in the letter if they proved to be true, even if such action was merely unilateral in not recommending the motel to its future convention guests. However, since it is unknown exactly who, if anyone, may have received this copy of the letter, and since a factual question may be presented as to the reasonableness of Young's belief that such person may have shared his interest in the letter's subject matter, the court cannot grant summary judgment as to this copy of the letter on the basis of a qualified privilege.

A finding of a conditional privilege as to the copy of the letter to the Chamber of Commerce conditionally negatives the presumption of malice raised by words libelous "per se" and shifts the burden to the plaintiff to show actual malice. Hanrahan v. Kelly, *supra*, 269 Md. at 29, 305 A.2d 151. Absent a finding of express malice, a conditional privilege, if not abused, defeats the libel action. *Id.* The final question then to consider on the element of privilege is whether the information contained in the letter was false and made with actual malice so as to constitute an abuse of the privilege. As stated in Orrison v. Vance, *supra*, "malice" essentially means an abuse of the privilege which is to be determined by all relevant circumstances including defendant's reasonable belief in the truth of his statements, the excessive nature of the language used, whether the disclosures were unsolicited, and whether the communication was made in a proper manner and only to proper parties. 262 Md. at 295, 277 A.2d 573. The Maryland Court of Appeals in *Orrison* also characterized malice as a reckless disregard of the truth, similar to the Supreme Court's definition in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

The circumstances surrounding the letter as reflected in the record do not indicate an abuse of the privilege in-

sofar as the copies of the letter to the motel and Chamber of Commerce are concerned. The mere fact that the letter was unsolicited, as are most allegedly defamatory communications, is not in itself sufficient to constitute an abuse of the privilege, if the author acted honestly, fairly, and in good faith. Fresh v. Cutter, *supra*, 73 Md. at 92–93, 20 A. 774; see Orrison v. Vance, *supra*. The letter contained no unnecessarily abusive language and was certainly not motivated by ill will since Young stated in his uncontradicted affidavit that he did not even know the plaintiff. In addition, the uncontradicted affidavit of Mrs. Young fully confirms that the letter accurately reflects her impressions of the motel and her treatment at the motel, which she communicated to her husband. There is no fact to indicate that Mr. Young should have disbelieved his wife of nine and a half years. Moreover, the motel and the Chamber of Commerce were proper recipients of the letter. The possibility that the copy of the letter sent to the College might have been received by a potentially improper party is not sufficient for this court to say that Young abused the privilege, especially since his belief in a mutual interest with the college in the conditions at the motel may have been reasonable.

The court therefore believes that the copies of the letter of Morton Young sent to the King George Motel and to the Annapolis Chamber of Commerce were privileged communications under the law of Maryland and that defendant is entitled to partial summary judgment thereon.

### III. *First Amendment*

It is necessary to determine whether First Amendment protection applies to the copy of the letter sent to the college since that copy has not been found privileged for summary judgment purposes although it may later appear that a directed verdict should be granted on the grounds either of privilege or lack of publication.

Defendant contends that First Amendment law, while normally applied in the context of mass media communications, applies as well to letters sent by private citizens about matters of public interest. Defendant points to the Supreme Court's plurality opinion in Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), in support of its position and, indeed, the Court's language in that case is very broad. The *Rosenbloom* decision extended the rule of New York Times v. Sullivan, *supra*, to place upon a plaintiff in a defamation suit the burden of proving a knowing or reckless falsity in all cases involving "matters of public or general concern" as opposed to merely cases involving "public figures." The Court's language is broad enough to impose this requirement, and consequently the attendant First Amendment law, in any defamation suit, regardless of whether the publisher of the alleged libel is a part of the mass media, so long as a "matter of public or general concern" is involved. While non-mass media cases applying First Amendment law are scarce, there are several which apply First Amendment standards to non-mass media communications. See United States v. Barcley, 452 F.2d 930, 933 (8th Cir. 1971); N.L.R.B. v. Holly Farms Poultry Industries, Inc., 470 F.2d 983, 985 (4th Cir. 1972); Jackson v. Filliben, 281 A.2d 604, 605 (Del.1971). None of these cases, however, deal with a letter sent as here to three persons or organizations with no apparent intent that it be widely published or discussed. On the other hand, the court in Hood v. Dun & Bradstreet, Inc., 335 F.Supp. 170 (N.D.Ga.1971), reasoned that the alleged libelous communication in that case, which was a confidential credit report sent to a Dun & Bradstreet subscriber, while a privileged communication, was not a proper subject for First Amendment protection since the *New York Times* rule was based upon the desirability of a public airing of a wide variety of views on all subjects. *Id.* at 178.

The logic of *Hood* makes an abundance of sense since the Supreme Court stated in New York Times v. Sullivan that the First Amendment "was

fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." 376 U.S. at 269, 84 S.Ct. at 720, quoting Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The premise upon which New York Times v. Sullivan and *Rosenbloom* is based does not extend to communications deliberately disseminated to only a very limited group or a single person nor make such limited communications appropriate subjects for First Amendment protection. To hold otherwise would emasculate the law of libel and leave the defense of qualified privilege meaningless since every defendant in a defamation case would seek to assert the First Amendment defense with its higher standards of proof, rather than rely upon qualified privilege. It is in this light that the copy of the letter to the college must be viewed and, consequently, this court does not believe that it was protected by the First Amendment, at least for purposes of a summary judgment motion. Viewed in the light most favorable to plaintiff, it is entirely possible that Young sent a copy of the letter to the college with the intention only that some action be taken rather than that it be openly discussed or published. As such it should be judged, on this motion for summary judgment, solely under the Maryland law of qualified privilege which this court has already done above.

The court therefore concludes that under Rule 56(b), F.R.Civ.P., defendant is entitled to partial summary judgment as to the copies of the letter sent by Young to the King George Motel and to the Annapolis Chamber of Commerce, but not as to the copy of the letter allegedly sent to "King George's College."

For the reasons set forth herein it is this 25th day of September, 1973, by the United States District Court for the District of Maryland,

Ordered that defendant's motion for summary judgment is hereby granted partially so that the complaint will be dismissed as to the copies of the alleged-ly defamatory letter sent by Morton Young to the King George Motel and to the Annapolis Chamber of Commerce; and it is further

Ordered that defendant's motion for summary judgment is hereby denied as to the copy of the said letter allegedly sent to "King George's College."

## SUPPLEMENTAL OPINION

Defendant having filed a motion for summary judgment on the issue of publication of the alleged libelous letter herein to "King George's College," and the plaintiff not having filed any opposing affidavits by March 1, 1974, the date set by the court for the filing of opposing affidavits by the plaintiff, the court is of the view that a hearing under der Local Rule 6 is not required on said motion for summary judgment.

On September 25, 1973, this court granted partial summary judgment and dismissed all claims against the defendant with one exception. The court denied summary judgment "as to the copy of the said letter allegedly sent to 'King George's College.' "

At page 67 of his deposition, plaintiff stated that he had at no time contacted anyone at St. John's College in Annapolis, Maryland, with respect to the letter which was sent to the Annapolis Chamber of Commerce. Although plaintiff did state in his deposition that "King George's College" was "the old name of St. John's College," the catalog of the latter institution, attached to defendant's motion for summary judgment, clearly shows that St. John's College was never known as "King George's College." St. John's College was founded in 1696 as "King William's School" and it bore that designation until 1784 when it assumed the present name. The Annapolis telephone directory, also attached in part to the defendant's motion for summary judgment, has no listing for "King George's College." In short, there is no material issue of fact as to the existence of "King George's College" in Annapolis. It is clear that there is no such college.

As was stated in the prior opinion of this court in this case:

"There is no evidence in the record to indicate that the letter addressed to King George's College by Young was ever actually received by St. John's College or by anyone else. The presumption that a letter sent through the mails was received by the addressee does not apply where the letter was addressed incorrectly.

 Since it affirmatively appears that the copy (if mailed) of the letter was misaddressed, it must be presumed that the copy was never delivered, opened, or examined, Stiegler v. Eureka Life Insurance Company, 146 Md. 629, 647–649, 127 A. 397 (1925), and that the postal authorities, treating the matter as undeliverable, either destroyed it or returned it to sender in compliance with existing regulations, i. e., 39 C.F.R. § 151.1, et seq. Accordingly, no genuine issue of material fact remains to be tried relating to the publication of said letter. It is clear that said letter was not published.

Accordingly, the defendant's motion for summary judgment must be granted.

It is so ordered this 7th day of March, 1974.